

# THE ATTORNEY GENERAL
## OF TEXAS

January 16, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Travis S. Ware
Criminal District Attorney
P. O. Box 10536
Lubbock, Texas    79408

Opinion No.  JM-1009

Re:  Whether  Attorney  General
Opinion MW-52 (1979) applies to
violations of municipal traffic
ordinances adopted pursuant  to
article 6701d, V.T.C.S.
(RQ-1568)

Dear Mr. Ware:

You ask whether Attorney General Opinion MW-52 (1979),
which held in  part that  a county  sheriff has  no duty  to
accept for incarceration in the county jail persons arrested
only for violations  of city ordinances,  applies to  viola-
tions of traffic  ordinances enacted by  a city pursuant  to
state law, specifically article 6701d, V.T.C.S.  We conclude
that the opinion  applies to cases  involving violations  of
ordinances which implement article  6701d or which  incorpo-
rate provisions of the statute,  but that it does not  apply
to  cases  involving  violations  of  municipal   ordinances
regulating forms of traffic not covered by the statute.

You inform  us that  the city  of Lubbock  and  Lubbock
County disagree over the classification of prisoners  incar-
cerated in  the  Lubbock  County Jail  for  the  purpose  of
determining whether the  city or the  county is  responsible
for the maintenance of such prisoners.  The county  asserts,
on the strength  of Attorney General  Opinion MW-52, that  a
prisoner who is arrested for a violation of a city ordinance
is a "city prisoner" regardless  of the source or nature  of
the ordinance.  The city, meanwhile, argues that there is  a
distinction between purely local ordinances, such as  zoning
or building  inspection ordinances,  and ordinances  adopted
pursuant to  state  law  and as  part  of  a  comprehensive,
statewide system  of  regulation.  The  city  contends  that
prisoners arrested for violations of city traffic ordinances
adopted pursuant  to article  6701d, the  Uniform Act  Regu-
lating Traffic on Highways,  should be classified as  "state
prisoners."

p. 5193

The relevant issue presented in Attorney General Opinion MW-52 was whether a person arrested for violating a municipal ordinance could legally be incarcerated in the county jail in the absence of an agreement between the city and the county under the Interlocal Cooperation Act, article 4413(32c), V.T.C.S. The attorney general answered in the negative, relying primarily upon section 45.05 of the Code of Criminal Procedure which provides that defendants in cases before the municipal court "shall be committed to the custody of the chief of police or city marshall . . . to be held by him in accordance with the ordinance providing for the custody of prisoners convicted before such . . . court." The attorney general determined that a city thus was responsible for the maintenance of prisoners who are defendants in municipal court. See also Attorney General Opinion O-7353 (1946). The opinion also observed that the state has only a nominal interest in prosecutions involving only violations of municipal ordinances, and no duty to prosecute such cases. The county sheriff, therefore, had no duty to incarcerate persons convicted of violating only municipal ordinances "absent a plain manifestation of the legislature's intent that a city may impose such a duty on the sheriff and the county" or an interlocal agreement.

The opinion did not refer specifically to the kinds of municipal ordinances under consideration. Thus, it leaves the impression that incarceration in the county jail for violation of any municipal ordinance will trigger the city's obligation for the maintenance of a prisoner. An examination of the authorities relied upon by the attorney general, however, helps place the opinion in perspective.

Article 45.05 of the Code of Criminal Procedure was construed to impose on a city the duty to maintain prisoners who are defendants in cases before the municipal courts. Article 45.03 of the Code of Criminal Procedure states the county attorney "may, if he so desires, also represent the State in such prosecutions," which are conducted by the city attorney. In Howth v. Greer, 90 S.W. 211 (Tex. Civ. App. 1905, writ ref'd), cited in Attorney General Opinion MW-52, the court considered a claim by the county attorney that he had the duty to represent the state in municipal court in cases involving municipal ordinances which covered substantially the same ground as state laws. Relying on article V, section 21, of the Texas Constitution, the court held that

> the county attorney has the right, and is
> charged with the duty, to represent the state
> in all prosecutions instituted for the

> violation of the criminal laws of the state in the corporation court, notwithstanding such prosecutions may appear to be for violation of ordinances of the city covering the same ground.

Howth at 213. The fact that in these cases only a violation of a municipal ordinance was charged could not alter their essential nature as state cases, "cases in which the state is not only a nominal, but a real, party." Id. The court expressly declined to consider whether the county attorney had any right to prosecute cases for violations of municipal ordinances regulating purely municipal affairs and which did not involve violations of any criminal laws of the state. Attorney General Opinion V-1147 (1951), also cited in Attorney General Opinion MW-52, answered this question in the negative.

Attorney General Opinion O-5416 (1943) was cited for the proposition that justice courts have no jurisdiction or authority over violations of a city ordinance. That opinion, however, held only that the justice courts were without jurisdiction when the violation of the city ordinance was not also a violation of a penal law of the state. It is therefore consistent with Howth v. Greer, supra. See also Attorney General Opinion V-745 (1948) (a justice of the peace has jurisdiction in cases involving the failure to obey instructions of traffic control signals placed within limits of a city by either state or local authorities in accordance with article 6701d).

Examined in light of these earlier authorities, the import of Attorney General Opinion MW-52 is that the maintenance of prisoners incarcerated in the county jail for violations of municipal ordinances only is the responsibility of the city when

> (1) the prisoner is not incarcerated for violating a criminal law of the state, and
>
> (2) the ordinance involves the regulation of purely municipal affairs and does not cover the same ground as a criminal law of the state.

We have not examined the municipal traffic ordinances of the city of Lubbock, but it is clear from the discussion thus far that the city is not responsible for the

maintenance of prisoners housed in the county jail for violating traffic ordinances that incorporate the provisions of article 6701d. What is not so clear is whether the city is liable for the maintenance of prisoners when the ordinances either validly deviate from the standards set forth in article 6701d or regulate forms of traffic not covered by the statute. In our opinion, the city is liable when only the second type of traffic ordinance is involved.

In support of its argument, the city points to various sections of article 6701d as evidence of the legislature's intention to create a comprehensive system of traffic regulation throughout the state that includes municipal ordinances adopted pursuant to the statute. Section 26 of the act states that the provisions of the act are applicable and uniform throughout the state and that

> no local authority shall enact or enforce any ordinance, rule, or regulation in conflict with the provisions of this Act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Act.

Section 31 authorizes municipalities to place and maintain traffic control devices in their jurisdictions necessary to warn or guide traffic or to carry out the provisions of article 6701d or local traffic ordinances. Section 169(b) authorizes municipalities to alter prima facie speed limits under certain conditions. Section 143 declares a violation of the act to be a misdemeanor unless made a felony by the act or other state law. The city concludes that a violation of an ordinance adopted pursuant to article 6701d is a violation of the comprehensive system of traffic regulation and, implicitly, of article 6701d itself.

Section 27 of article 6701d, however, recognizes the power of local authorities, including home rule cities, to regulate certain kinds of traffic not governed by article 6701d. Subsection (a) of section 27 provides that the act

> shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from
>
> 1. Regulating the stopping, standing, or parking of vehicles;

2.   Regulating traffic by means of  police officers or traffic-control devices;

3.   Regulating or prohibiting  processions or assemblages on the highways;

4.   Designating  particular  highways  as one-way highways . . . ;

5.   Regulating  the speed  of vehicles  in public parks;

6.   Designating any  highway as a  through highway . . . or designating any intersection as a stop intersection  or a yield  intersection;

7.   Regulating the  operation of  bicycles and requiring the registration and  licensing of  same,  including  the  requirement  of  a registration fee;

8.   Regulating or prohibiting the  turning of vehicles or specified types of vehicles at intersections;

9.   Altering the  speed limits as  authorized herein;

10.  Designating  school  crossing  guards and school crossing zones;

11.  Adopting such  other traffic  regulations as are specifically authorized by  this Act.

Several of  these provisions  recognize  a city's  power  to adopt traffic ordinances in pursuit of its police power that either depart in some details from the regulatory  standards in the act  or that  regulate certain forms  of traffic  not covered by the act.  It  also demonstrates that a city  need not rely  solely on  article 6701d  for authority  to  adopt ordinances regulating traffic.  Section 26 merely  confirms that the  statute is  a limitation  on a  city's  ordinance-making power in those areas governed by the statute.

Read together, sections 26 and 27 mean a city may adopt three kinds of traffic ordinances.  First, a city may  adopt ordinances that implement article 6701d and incorporate  its

provisions. Second, a city may promulgate ordinances that implement but are in conflict with article 6701d where the statute authorizes a departure from its standards. See, e.g., Ex parte Devereaux, 389 S.W.2d 672 (Tex. Crim. App. 1965) (discussed below). Third, a city may adopt ordinances that regulate forms of traffic not governed by article 6701d.

The regulatory variances permitted by sections 26 and 27 of article 6701d no doubt are intended to permit cities to tailor their traffic ordinances to address purely local interests. This accommodation of purely local interests might thus reflect the legislative intention that cities remain responsible for the maintenance of prisoners incarcerated for violations of city traffic ordinances that depart in any way from the standards provided in article 6701d. Attorney General Opinion V-745 (1948), however, concluded that justice courts have jurisdiction over cases involving ordinances punishing the failure to obey traffic control signals, thus suggesting that violations of such ordinances are to be treated as violations of article 6701d.

In Ex parte Devereaux, supra, the court upheld a conviction for speeding in violation of a municipal ordinance which apparently altered the prima facie speed limit set in article 6701d and prescribed a punishment different than section 143 of the statute. The court invalidated the ordinance as to punishment, but said

> [i]nsofar as the ordinance alters the prima facie speed limits set out in Sec. 166(a) of Article 6701d, under authority of Secs. 166(a), 167, and 169, and implements said statute without altering or modifying the basic rule established in paragraph (a) of Sec. 166, it is valid and a conviction for violation of the state statute, implemented by the ordinance, with punishment authorized by Sec. 143 of said Article 6701d . . . .

Devereaux at 673. See also Norris v. State, 576 S.W.2d 371 (Tex. Crim. App. 1978). Because persons incarcerated for violating municipal traffic ordinances that implement article 6701d are considered state statute violators, the city is relieved of its obligation to provide for the maintenance of such prisoners once they are accepted for incarceration by the sheriff of the county. See Attorney General Opinions JM-151 (1984); H-169 (1973).

Accordingly, we conclude that Attorney General Opinion MW-52 (1979) does not apply to cases involving the incarceration of persons arrested for violating municipal traffic ordinances that implement article 6701d, V.T.C.S.; the opinion does, however, apply to cases involving violations of municipal ordinances regulating forms of traffic not covered by article 6701d.

## S U M M A R Y

Attorney General Opinion MW-52 (1979) does not apply to cases involving the incarceration of persons arrested for violating municipal traffic ordinances that implement article 6701d, V.T.C.S. A city is not responsible for the maintenance of prisoners incarcerated in the county jail for violations of municipal traffic ordinances that implement article 6701d once they are accepted for incarceration by the sheriff of the county.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General